**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DONALD STOCKTON,

       Plaintiff,

v.                                      CASE NO: 8:05-cv-2387-T-26TBM

KRAFT FOODS GLOBAL, INC., f/k/a
KRAFT FOODS NORTH AMERICA, INC.,

       Defendant.

_____/

## <u>O R D E R</u>

Before the Court is Defendant's Motion for Summary Judgment (Dkt. 14),
Plaintiff's Response in Opposition (Dkt. 17), and the various exhibits including the
administrative record in this action seeking long term disability (LTD) benefits pursuant
to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001
et seq. (ERISA). (Dkts. 15, 16 & 17). After careful consideration of the submissions of
the parties and the entire file, the Court concludes that summary judgment should be
granted in favor of Defendant.[1]

_____

[1] The named Defendant, Kraft Foods Global, Inc. f/k/a Kraft Foods North
America, Inc. (Kraft Foods) contends that the correct Defendant in this action should be
the ERISA plan titled Kraft Foods North America, Inc. Long Term Disability Plan (the
Plan). See Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997)
(holding that proper party defendant in denial of ERISA benefits action is party that
controls administration of plan). In the Motion for Summary Judgment, the Plan consents
to becoming a party in this action and Defendant's counsel files the Motion on behalf of

**Background**

Plaintiff Donald Stockton had worked for Nabisco, a division of Kraft Foods, in northern California since February 1, 1978, as a customer category manager. (Dkt. 16 at AR 89 & 167).  He suffered a broken neck in a motorcycle accident in 1972 and was left paralyzed on the left side of his body with spasticity.  (Dkt. 16 at AR 15, 56 & 99).  After years of enduring left hemiplegia, his right shoulder, hip, knee, and ankle developed osteoarthritis from placing all his weight on his right side to drag his left leg in order to walk.  (Dkt. 16 at AR 19, 34 & 37).  His last day of work was either December 17 or 19, 2003.  (Dkt. 16 at AR 39, 41, 84, 169 & 170).  The exact sequence of events leading up to his claim for LTD benefits filed on September 20, 2004, and the subsequent denial, is not crystal clear, but this Court will do its best to recount the history.

**The Severance Period**

The file reflects that Plaintiff accepted a severance package when his position as customer category manager was terminated at Nabisco (Kraft Foods) in California.  (Dkt. 16 at AR 43, 99 & 192-193).  Although there is no copy of the severance package in the record, Plaintiff received nine months' severance pay with eligibility for LTD benefits.  (Dkt. 16 at AR 43, 87 & 99).  Notations in the file indicate that Plaintiff would have been eligible for LTD if his disability began during his severance period and he continued to be disabled when the severance period ended.  (Dkt. 16 at AR 87).  The Plan states that "if

---

both Kraft Foods and the Plan.

you become disabled while receiving severance under [one of the two severance plans offered by Kraft Foods], your disability may be covered under the LTD Plan."  (Dkt. 15 at 9; Dkt. 16 at AR 10).  The Plan also provides that "[e]ligibility for disability benefits ends when your active employment ends or if you are no longer a member of an eligible group."  (Dkt. 15 at 20).  The severance period ended on September 17, 2004, and therefore his eligibility for LTD benefits ceased that same day.  (Dkt. 16 at AR 11, 39 & 43).[2]

### The Disability Claim

Plaintiff filed his claim for LTD benefits on September 20, 2004, claiming that the date he was first treated for his right hip, knee and ankle pain was over a year earlier on June 3, 2003. (Dkt. 16 at AR 84-85 & 197).  The following notation dated September 10, 2004, in the claims file indicates that Plaintiff at least told a representative that he had filed a previous short term disability (STD) claim in 2003 for the same condition:

> LDW 12/19/03, was paid 9 wks of accrued vacation starting 12/22/03.  Has been on 9 month severance package since then— considered on active duty w/ biweekly pay—  9 month period ends 9/17/04.  *Clmt states he's eligible for ltd and wanted to reactivate the claim he filed in 2003 for same condition.*

---

[2]   Also in the file are several notations from conversations between various representatives of Hartford as the claims administrator and Plaintiff in which Plaintiff indicated he had left work in December 2003 because of the pain and hoped after convalescing at home, his medical condition might improve.  (Dkt. 16 at AR 189, 190, 192 & 198).  Plaintiff did admit, however, that he had taken a "package" in which he was paid for nine months.  (Dkt. 16 at AR 189 & 192).

(Dkt. 16 at AR 99) (emphasis added).  The record does not contain, however, a copy of an STD claim or any other claim for disability benefits made prior to the claim of September 2004.[3]  Plaintiff was under the care of Dr. Bruce Franklin with Kaiser Permanente, neurosurgeons in California, from June 3, 2003, through December 19, 2003, when Plaintiff apparently moved to Florida.  (Dkt. 16 at AR 84-85 & 197).  None of Dr. Franklin's records, however, were submitted with the claim for LTD benefits, and there is nothing in the record to confirm what treatment, if any, Plaintiff received during his nine-month severance.  (Dkt. 16 at AR 11).  The record shows that in conversations between the claims administrator and Plaintiff, Plaintiff indicated that he had not seen a physician for the nine-month period.  (Dkt. 16 at AR 99 & 189).  He stated he had taken medication but he never submitted any proof of who wrote the prescriptions or where he purchased them.  (Dkt. 16 at AR 189-190).

## Terms of the Plan

Both parties agree that Kraft Foods North America, Inc.'s summary plan description titled "Disability Plans SPD (Short-Term Disability and Long-Term Disability for Salaried Employees)" (the Plan), governs this claim and vests discretionary authority in the plan administrator.  (Dkt. 15).  The Plan designates Kraft Foods Global, Inc. Administrative Committee as the plan administrator and CNA Insurance Companies

---

[3]  It appears that Plaintiff concedes he did not file an STD claim because he learned that applying for severance made him ineligible for STD.  (Dkt. 17 at pg. 14).

(Hartford) as the disability claims administrator or DCA.  (Dkt. 15 at 26; Dkt. 16 at AR

45).  The relevant language bestowing discretionary authority provides as follows:

> The plan administrator has complete discretionary authority to
> interpret and construe the terms of the plans and to decide
> factual and other questions relating to the plans and plan
> benefits, including, without limitation, eligibility for,
> entitlement to and payment of benefits.  Benefits under the
> plans will be paid only if the plan administrator decides in its
> discretion that the applicant is entitled to them.

(Dkt. 15 at 26).  The Plan and its benefits are funded by participating employee

contributions.  (Dkt. 15 at 26).

Total disability is defined by the plan as follows:

> For the first 30 months of a disability period, you will be
> considered totally disabled if, due to a physical or mental
> impairment caused by injury or sickness:
>
> You are continuously unable to perform the **material and
> substantial duties** of your **own occupation** AND
>
> You are not **gainfully employed**. . . . AND
>
> You are receiving **appropriate and regular care for your
> condition** from a doctor whose specialty or expertise is the
> most appropriate for your disabling condition(s) according to
> **generally accepted medical practice**.  The care provided to
> you should be of demonstrable medical value for your
> disabling condition(s) and should continue until **maximum
> medical improvement** (MMI) is achieved and thereafter as is
> appropriate. . . .

(Dkt. 15 at 15) (emphasis in original).  "Sickness" is defined in the Plan as "illness or

disease causing a disability that occurs while your coverage under the plans is in effect."

(Dkt. 16 at AR 8).  "Material and substantial duties" are "the necessary functions of your

own occupation at Kraft that cannot be reasonably omitted or altered." (Dkt. 15 at 8). One's "own occupation" means "the occupation that you were performing at Kraft for income or wages when you became disabled." (Dkt. 15 at 8). "Appropriate and regular care for your condition" is defined in relevant part as "regularly visiting a doctor as frequently as is medically required to meet basic health needs and complying with the prescribed course of treatment." (Dkt. 15 at 7). "Maximum medical improvement (MMI)" means "obtaining a level of recovery from injury or sickness at which no further lasting improvement can be reasonably anticipated, based on medical probability." (Dkt. 15 at 8).

## Requirements of the Job

The position of customer category manager requires (1) sitting for three to six hours per day, (2) standing, walking, bending, squatting, stooping, reaching, reaching over shoulder, pushing, pulling, twisting, crouching, and carrying up to ten pounds for occasionally up to three hours, and (3) never climbing, crawling and lifting or carrying up to twenty-five pounds. (Dkt. 16 at AR 95-97). When Plaintiff initially filed his claim, he stated that his job was 85% office work and 15% driving and calling on Albertson's representatives. (Dkt. 16 at AR 100). He spent approximately three to four days in the field working with representatives. (Dkt. 16 at AR 100). Part of his job included making decisions about the configuration of shelf space and product, which might require him to stand for a long period of time. (Dkt. 16 at AR 108).

## Medical Records and Treatment

Three doctors provided medical opinions: Dr. Farrukh Zaidi, a rheumatologist; Dr. Mary Shriver, a doctor of osteopathy board certified in neurology; and Dr. Harry Wassel, an orthopedic surgeon. (Dkt. 16 at AR 141-162, 4-8, 34-38 & 56-59). The earliest medical record is dated September 27, 2004, which is after the severance period had expired and the date he first saw Dr. Zaidi. (Dkt. 16 at AR 145). Dr. Zaidi's notes reveal that Plaintiff told him he had been unable to work since December 2003. (Dkt. 16 at AR 145). X-rays taken on September 30, 2004, at the request of Dr. Zaidi show osteoarthritis in his right ankle and right knee. (Dkt. 16 at AR 151 & 152). Dr. Zaidi noted that the osteoarthritis was "quite symptomatic with a significant impact on the quality of his life and his functional capacity." (Dkt. 16 at AR 147). Dr. Zaidi opined, nevertheless, that Plaintiff was capable of performing the requirements of the position of customer category manager, specifically sitting three to six hours per day, standing, walking, bending for up to three hours, and never climbing, crawling or lifting greater than twenty-five pounds. (Dkt. 16 at AR 127). He also confirmed his opinion in an unsworn statement given in April 2005. (Dkt. 16 at AR 112).

Dr. Shriver wrote on March 1, 2005, after she examined Plaintiff in her office, that Plaintiff had told her that Dr. Franklin, the neurosurgeon in California, had determined that he could not benefit from surgical intervention. (Dkt. 16 at AR 56). She opined that he "would be unable to work at occupations which require heavy lifting using both hands, rapid alternating movements of the left hand or coordination of the left foot or hand."

-7-

(Dkt. 16 at AR 59).  He would also not be able to work at jobs that require balancing, climbing, prolonged squatting, stooping, or heavy pulling or pushing.  (Dkt. 16 at AR 59). Plaintiff told her that he would be able to work at sedentary jobs if he were permitted to intermittently stand, stretch, or move around.  (Dkt. 16 at AR 59).

Plaintiff did not see Dr. Wassel until April 26, 2005, which was after the initial denial of LTD benefits.  (Dkt. 16 at AR 34-38).  Dr. Wassel confirmed the diagnosis of right knee and ankle osteoarthritis and left hemiplegia.  (Dkt. 16 at AR 37).  He opined that after his physical examination of Plaintiff and after reviewing his medical records, Plaintiff "is not capable of even the most sedentary-type work."  (Dkt. 16 at AR 38).  Dr. Wassel later examined Plaintiff in September 2005, before his second, voluntary appeal directly to the employer, Kraft Foods.  (Dkt. 16 at AR 4-8).  In his report, Dr. Wassel responded to Hartford's position that Plaintiff had not been receiving appropriate and regular care for the nine-month period of severance.  Dr. Wassel stated that because Plaintiff had reached maximum medical improvement before severance started and "there is no indicated surgery at the time, the only treatment option was ongoing conservative care" which he claimed Plaintiff was receiving.  (Dkt. 16 at AR 8).  No description of the conservative care was ever provided.

### Denial of Benefits

On November 3, 2004, Hartford as the claims administrator denied LTD benefits. (Dkt. 16 at AR 43-45).  The letter dated November 3, 2004, noted that initially Plaintiff stated he had accepted a severance package, but in a subsequent conversation with

representatives of the claims administrator had stated that he had stopped working due to

pain in his hip, knee and ankle.  (Dkt. 16 at AR 44).  The letter also confirmed that

Plaintiff admitted that a physician had not taken out of work in December 2003.  (Dkt. 16

at AR 44).  As additional reasons supporting the denial of benefits, the letter recited that

he was not under the treatment of a physician for the nine-month period from December

2003 to September 2004, but was "self-treating" his condition with medication.  (Dkt. 16

at AR 44).  Moreover, the letter noted that Plaintiff had failed to provide the telephone

numbers of the pharmacies from which he had purchased the medication.  (Dkt. 16 at AR

44).  After setting forth the job duties of a customer category manager, the letter

emphasized that the only physician who had examined Plaintiff stated that he was capable

of performing the job.  (Dkt. 16 at AR 44).   The letter concluded as follows:

> In summary, the medical information provided to us fails to
> support your inability to perform the duties of your
> occupation of Customer Category Manager.  As your plan
> states you must be continuously unable to perform the
> material and substantial duties of your own occupation, we
> find that no benefits can be provided for this claim.

(Dkt. 16 at AR 44).

Plaintiff appealed and submitted medical records from two new physicians, Drs.

Shriver and Wassel.  Hartford as claims administrator denied the appeal of Plaintiff's

LTD benefits on June 14, 2005.  (Dkt. 16 at AR 10-12).  The letter states that Hartford is

relying on the provisions of the Plan that refer to eligibility for disability "while receiving

severance" and the absence of any proof that Plaintiff was receiving "appropriate and

regular care for his condition," as that term is defined by the Plan.  The letter provides in

pertinent part as follows:

> Based on the information reviewed, Mr. Stockton's severance
> period ended 9/17/2004, at which time his LTD coverage was
> no longer in effect.  Therefore, as of 9/17/2004 his eligibility
> for LTD benefits ended, as his active employment ended and
> was no longer considered a member of an eligible group.  The
> information indicates that Mr. Stockton sought medical
> treatment on 9/27/2004, which is after the termination of his
> severance period, at which time his LTD coverage was no
> longer in effect.
>
> While we understand that Mr. Stockton suffers from several
> medical conditions, and may experience symptoms related to
> such conditions, medical evidence was not provided to
> demonstrate that his pre-existing condition(s) changed or
> deteriorated as of 12/19/2003, disabling him from performing
> the material and substantial duties of his own occupation.
> The evidence currently in file indicates that Mr. Stockton has
> suffered from left hemiparesis after a motorcycle accident in
> 1972, which left him with limited functional abilities;
> however, has been able to perform the material and
> substantial duties of his own occupation throughout the years.
>
> . . . .We must abide by the medical evidence provided and the
> plan provisions.

(Dkt. 16 at AR 11).

The Plan provides for a voluntary appeal to the employer, Kraft Foods, after the

appeal with the claims administrator, Hartford, is concluded.  Plaintiff filed a voluntary

appeal and supplemented the record with another report from Dr. Wassel.  (Dkt. 16 at AR

2-8).  On December 20, 2005, Kraft Foods concurred with Hartford's decision to deny

LTD benefits.  (Dkt. 16 at 164).  Kraft Foods reiterated that "no medical documentation

provided clear evidence of a disabling condition that was present as of December 20,

2003 and would have precluded him from performing the regular duties of his occupation

had his employment not ended on December 19, 2003." (Dkt. 16 at AR 164).  The letter

points out that Plaintiff was not seen by a physician until September 27, 2004, which was

subsequent to the date his eligibility ended.  Kraft Foods stated that "Dr. Wassel was

erroneous in his assertion that Mr. Stockton left his employment at Nabisco because of

his pain, when, in fact, employment records indicate Mr. Stockton's position was

eliminated, resulting in his eligibility for severance benefits." (Dkt. 16 at AR 164).  It

was clear to Kraft Foods that Plaintiff was receiving appropriate medical care during the

severance period because "there is no evidence of visits for pain or medication

management, therapy or anything else submitted with your appeal." (Dkt. 16 at AR 164).

The letter concluded with the observation that "it is not reasonable to accept an assertion

that a disability began as of a date when no treatment or testing was sought." (Dkt. 16 at

AR 164).


## Applicable Law

The parties do not dispute that the Plan grants total discretion in the plan

administrator to make benefit determinations.[4]  Thus, the applicable standard of review in

---

[4]  Pursuant to the Plan, the plan administrator delegated all decisions regarding
benefits to Hartford, the claims administrator.  Because the Plan is funded with
employees' contributions, no concerns regarding conflict of interest arise.

this case is arbitrary and capricious, which requires the least amount of scrutiny on the part of the Court.  See Williams v. BellSouth Telecomm., Inc., 373 F.3d 1132, 1137 (11th Cir. 2004) (setting forth various standards of review and stating that where plan documents grant discretion to the administrator and no conflict of interest exists, standard is essentially abuse of discretion "according the most judicial deference (and thus, the least judicial scrutiny)").  Applying the broad framework enunciated in Williams, and as reiterated in Tippitt v. Reliance Standard Life Ins. Co., 457 F.3d 1227, 1232 (11th Cir. 2006), the next step requires application of *de novo* review to the administrator's benefits-denial decision to determine whether it is "wrong"— that is whether the Court disagrees with the decision.  If the decision is not deemed "wrong," then the inquiry ends.  After a *de novo* review of the file, the Court finds that the decision to deny LTD benefits is not "wrong."

## Analysis

Hartford's decision to deny LTD benefits was reasonable based on the facts known to Hartford at the time of the denial and throughout the appeal process.  Plaintiff does not dispute that he accepted a nine-month severance package as of December 17, 2003, his last day at work.  According to the terms of the Plan, any disability must have occurred during the time of severance in order to qualify for consideration.  The severance period ended September 17, 2004, and Plaintiff filed his claim for LTD benefits September 20, 2004.  Plaintiff was required to prove to Hartford that he had suffered a disability that

-12-

would not permit him to fulfill the material and substantial duties of his "own occupation," in other words, the position of customer category manager.

Of the three doctors who submitted opinions in this case, Dr. Zaidi did not provide any report which would substantiate the claim for disability. Dr. Zaidi did not examine Plaintiff until after the severance period ended. Based on the job description given, he found Plaintiff capable of working in his own occupation. Dr. Zaidi confirmed his opinion even over a year later when his unsworn statement was taken. Although Dr. Zaidi agreed that his opinion might be different if the job description was altered, this fact does not change that the record supports the job description as provided to Dr. Zaidi. The medical records show that Plaintiff suffered osteoarthritis in his right knee and ankle caused by the constant dragging of his left leg. There is no question that Plaintiff suffered functional impairment, but he had performed his job for many years without claiming disability. To the extent he contends he had filed an earlier claim for STD benefits, there is no record of any such claim.

Apart from Dr. Zaidi's records, Plaintiff submitted the opinions of Drs. Wassel and Shriver as evidence that he could not perform the physical requirements of his job. Although Dr. Wassel opined that Plaintiff could not perform even sedentary work, he did not examine Plaintiff during the relevant time period, and he cannot confirm that Plaintiff received any treatment during that period. Dr. Shriver did not examine Plaintiff during the severance period either, but, in any event, she concluded that Plaintiff could perform

some sedentary work.  She did not provide an opinion with respect to whether Plaintiff could perform the position of customer category manager.

After the denial of his appeal, he filed a voluntary appeal directly with Kraft Foods, which was again denied.  Dr. Wassel's last report, which was provided for the last appeal, attempts to characterize Plaintiff's severance period as one in which Plaintiff was receiving "appropriate and regular care" pursuant to the terms of the Plan.  This last-ditch effort on the part of Plaintiff to fit within the strictures of the Plan's terms is of no avail.[5] The medical records submitted by Plaintiff do not substantiate that he was receiving even "conservative care" during the nine-month period.  He never submitted records from the physician in California who had been treating him, and he never submitted any pharmacy records, or any records at all, showing any type of medication that he took during severance.

Even if Plaintiff had filed his claim during the severance period, he did not prove he was disabled during the relevant time.  While the x-rays show that he suffered from osteoarthritis, these x-rays standing alone do not show that he was unable to perform his job.  There is no proof that he was receiving treatment from late December 2003 through September 2004, and there is no requirement that Hartford give greater weight to the opinion of Dr. Wassel, who did not examine him until long after the severance period

---

[5]   The Court rejects Plaintiff's argument that the Plan language is ambiguous and susceptible of two different reasonable interpretations, one affording benefits and the other excluding benefits.

ended, than to that of Dr. Zaidi.  Based on a finding that Hartford's interpretation of the

Plan and the facts was reasonable, the Court need make no further inquiry.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1)     Defendant's Motion for Summary Judgment (Dkt. 14) is **GRANTED**.

(2)     The Clerk is directed to enter judgment in favor of Defendant and against

Plaintiff.

(3)     The Clerk is directed to close the file.

**DONE AND ORDERED** at Tampa, Florida, on October 31, 2006.


_s/Richard A. Lazzara_
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**


<u>COPIES FURNISHED TO</u>:
Counsel of Record